Burket, J.
The cause of action stated in the petition and urged in argument is, that the act of May 4, 1891, 88 O. L., 593, “is a special act conferring corporate powers; that it is not general in its character, but is special legislation and is unconstitutional and void. ’ ’
The first section of the act is as follows:
“Section 1. Be it enacted by the General Assembly of the State of Ohio, That whenever in any city of the fourth grade of the second class, which at the federal census of 1890 had a population of not less than 5,750 and not more than 5,800, or which at any subsequent federal census may have such population, individuals and corporations owning more than one-half of the real and personal property assessed for taxation in such city, as shown by the tax duplicate of the county in which Such city is situated, .then in force, shall by their petition in writing request the council of such city to provide for the construction of a line of railway *397 between termini designated in such .petition (one of which shall be such city) by such city and at its expense, the city council of such city may, by a resolution passed by a majority of all the members elected thereto, declare it to be essential to the interests, of such city that the line of railway so prayed for in said petition be constructed by and at the expense of such city, and it shall thereupon be lawful for a board of trustees to be appointed, as hereinafter provided, to borrow, and they are hereby authorized to borrow, as a fund for the construction of such railway, an amount not exceeding the sum-of five per cent of the value of the property, real and personal, within such city, as the same are assessed on the tax duplicate of the county in which said city is situated; and to issue bonds therefor in the name of such city and under the corporate seal thereof, bearing- interest at a rate not to exceed six per cent per annum, payable semi-annually, such bonds to be redeemable at the option of such city at any time after five years from the date thereof, and to be payable in twenty years from said date, at such place as shall be deemed best by said board; said bonds shall be signed by the president of said board, and attested by the clerk of such city, who shall keep a register of the same, and they shall be secured by a mortgage upon said railway and by the pledge of the faith of such city, and a tax which it shall be the duty of the council thereof annually to levy, which tax shall not exceed five (5) mills on the dollar in any one year, to pay the interest and provide a sinking fund for the final redemption of said bonds; provided, that such city shall not in any one year levy taxes to a greater amount than fourteen (14) mills on the dollar, including- the levy for *398 said bonds; and provided, that no money shall be borrowed on bonds issued until after the question of providing- the line of railway specified in said resolution shall have been submitted to a vote of the qualified electors of such city, at a special election to be ordered by the city council thereof, of which not less than twenty days’ notice shall be given in the papers published in such city; and further provided, that two-thirds of said electors voting at such election shall decide in favor of said line of railway. The returns of said election shall be made to the clerk of said city, and be by him laid before the city council, who shall declare the result by resolution. The bonds issued under the authority of this section shall not be sold or disposed of for less than their par value. ’ ’
That section one of article thirteen of the constitution, which provides that “the general assembly shall pass no special act conferring corporate powers,” applies as well to municipal, as to private corporations, is established by the following cases: State v. Cincinnati, 20 Ohio St., 18; 23 Ohio St., 445; and State v. Mitchell, 31 Ohio St., 592.
The act in question clearly confers corporate power. In Walker v. Cincinnati, 21 Ohio St., 14, the court held on page 56 that the city was by that act authorized to build a railroad, but that the city acted through its trustees. The court say: “But it is clear that the trustees are a mere agency through which the city is authorized to operate for its own sole benefit. Neither as individuals, nor as a board have they any beneficial interest in the fund which they are to manage, or in the road which they are to build. They are in fact, as well as in name, but trustees, and the sole beneficiary of the trust is in the city of Cincinnati.”
*399 The corporate power to build a railroad acting throug'h trustees, is therefore given by the statute in question. The corporate power to levy taxes to pay interest and create a sinking fund for the payment of the bonds, is given by this act. State v. Cincinnati, 20 Ohio St., 18; State v. Pugh, 43 Ohio St., 98, 115. The corporate power to call and direct an election is also given by this act. State v. Mitchell, 31 Ohio St., 592, 608; State v. Constantine, 42 Ohio St., 437-444.
The above enumerated corporate powers are granted by the act in question, and if the act is special, it is in violation of section one of article thirteen of the constitution. The defendant in error relies upon the case of Walker v. Cincinnati, 21 Ohio St., 14, but in that case the question as to whether the act then under consideration was a special act conferring corporate power, was not made by counsel, and was not considered by the court. The act was regarded as general. The Walker case is therefore not an authority upon the question. Cities are by statute divided into classes and grades, and while some of the classes are so fixed as to include at this time only one city, yet other cities may, under present statutes, come into such established classes, either by increase or decrease of population, followed by proper proceedings authorized by statute. Whatever may be said as to the validity of a statute conferring corporate power upon an established class containing only one city, it is clear that when an act is manifestly intended to, and does in fact, at the time of its passage, apply to only one of a given class, consisting of many, it is special. The city to which the act', by some slight characteristic, is made to so apply, does not thereby become a class by it *400 self, but is thereby excepted out of the class to which it belongs; and the usual provision in such statutes, that any city having such characteristic, or any other city which may thereafter have the same, shall have the corporate power therein conferred, does not have the effect to raise such other city into any class,-but has the effect to place it into such exception.
Usually, to make an act conferring corporate power general and not special, the power should be conferred upon existing classes, but this is not always necessary, as there are cases in which the aim and object of the proposed statute cannot well be accomplished without making other and new classes; but in such cases there must be some substantial condition or characteristic requiring such classification. Bronson v. Oberlin, 41 Ohio St., 476, is a sample of such cases, and it goes to the extreme, verge of- constitutionality, and should not be extended. But when the attempted distinguishing mark or characteristic is only a small difference in population, as in the act here in question, such difference is not substantial, and shows on its face that it is not an effort at classification, but an evasion' of a classification already existing. Such laws are special, and when they confer corporate power they are unconstitutional and void. In the case of Fields v. Commissioners of Highland County, 36 Ohio St., 476, the population provided in the act was not less than 29,130, and not more than 29,135, and this court, while holding the act unconstitutional on other grounds, used the following language as to the point here in question :
“There is no doubt that the county of Highland is the only county in the state to which the provi *401 sions of this act can ever apply, and the legislature might just as well have conferred on the commissioners of that, county, in express terms, and by direct language, the power actually conferred, as to name the county through the aid of the previous federal census. If the object in employing the language used to designate the county was to give to the act a general character, and thereby to obviate any constitutional objection, while intending to limit its operation to one county, the means adopted very clearly fails to accomplish the object intended. This court has repeatedly said-that the constitutionality of an act, in respect to being local or general, is to be determined by its operation, without reference to its form. The State ex rel. v. The Judges, 21 Ohio St., 11; The State ex rel. v. Mitchell, 31 Ohio St., 592; McGill v. The State, 34 Ohio St., 228. If local in its operation, no phraseology can make it general. The act in question is not only local in its operation, but it was so intended ■ to be by the legislature; and if a law of a general nature, within the meaning of the constitution, it is clearly unconstitutional because of such restricted operation.”
To the same effect is the holding of this court, in Kenton v. State, 52 Ohio St. 59; and in State v. Bargus, 53 Ohio St., 94.
It is therefore clear that the act in question is unconstitutional and void.
The rights of the railway company as to the recovery of any taxes it may have paid, and the liability, if any, of the signers of the original petition for an election, and of others who may have so aided and assisted the scheme as to be estopped, are not before us and are not here decided.
The fact that after the dissolution of the injunc *402 fc on, the plaintiff in error paid the taxes then due,. does not have the effect to prevent plaintiff from prosecuting its proceedings in error to test the validity of said act.
The action was commenced against John R. Martin, then county treasurer, and before the case came into the circuit court or this court, his term of office had expired, and his successor had been elected and qualified, and had been inducted into office. The question is now made, that the proceedings in error in the circuit court, and in this court should have been against the 'successor, and not against John R. Martin, who was no longer treasurer. The point is not well taken. The action in such cases is regarded as against the treasurer, whoever he may be, and it may proceed •through all its stages in all courts in the same manner in which it was commenced, or if desired, the new treasurer may, on motion, be substituted in the place of the retiring one, and this is certainly the better practice. The treasurer in office should, as one of his official duties, take charge of, and look after all actions against or in behalf of his office; but a failure to substitute the new treasurer, does not have the effect to abate the action, nor cause its dismissal on motion.

The judgments of the circuit court and court of -common pleas cvre both reversed and this cause is remanded to the court of common pleas with instruc■tions to overrule the demicrrer to the petition and for fu/rtherproceedings in the case.

Judgment accordingly.